In the Matter of William T. Cusack, an Attorney.

First Department, March 2, 1928.

**Attorney and client — disciplinary proceedings — attorney suspended for two years for converting funds of client.**

The respondent, an attorney at law, is suspended from practice for the period of two years for converting money collected for a client. Consideration was given by the court to the previous good reputation of the respondent and the fact that at the time of the conversion the respondent's child was very ill and he was in great need of money to save his child's life.

Disciplinary proceedings instituted by the Association of the Bar of the City of New York.

*Einar Chrystie*, for the petitioner.

Respondent in person.

Dowling, P. J. The respondent was admitted to practice the profession of the law in May, 1913, in the New York Supreme Court, Appellate Division, Second Department.

The testimony taken before the official referee shows that after the respondent had been retained by one Frank Walsh, a private chauffeur, to collect damages for personal injuries, he collected the sum of $150 in settlement of Walsh's claim on or about December 29, 1925, and converted the amount collected to his own use and that thereafter he falsely represented to his client that he had not received it. In June, 1926, Walsh having retained the services of another attorney succeeded in collecting $50 from the respondent. No further sums had been paid to Walsh prior to the time that the matter was brought to the attention of the Grievance Committee of the Bar Association. Thereafter the balance of the money was paid to him.

The respondent upon the hearing frankly admitted the conversion of the money. He pleaded in mitigation that when he got the money, his little daughter was ill with double pneumonia, he was back in his rent, he had day and night nurses attending his child for two weeks, and a day nurse for half a week longer, and a doctor calling at the house two or three times a day. He was paying seventeen dollars a day for nurses alone and his business was very bad. He says he had no intention whatever of keeping the money from Walsh and fully intended to pay him, but never could get on his feet, and the fifty dollars paid Walsh came from petitioner's father. He testified: " I have no defense whatsoever. The only defense is that I never intended — I never have defrauded

anybody out of any money.   I did not intend to do it in this case; but as I stated I could not get on my feet, and I was going steadily in debt and this money just came in when I needed it most.   That is all I can state."

It appears from the affidavit of his family physician that respondent's child was taken ill on December 12, 1925, with an ailment which developed into double pneumonia, and that she was discharged as cured on January 14, 1926.

There is no denial that he concealed from Walsh the fact that he had received this money, from December 31, 1925, until June 1926, when Walsh had to retain another attorney to collect what was due him and received fifty dollars on account, paid by respondent's father, and that the balance of twenty-five dollars was paid Walsh only when the matter was brought to the attention of the grievance committee.

Respondent threw himself on the mercy of the court and confessed his breach of trust without equivocation.   He did not lie or perjure himself to escape the consequences of his act.

Of course he had no right to use his client's money and violate his trust as an attorney by failing to make immediate disclosure to his client of the receipt of the money and to make immediate payment to the client of his share thereof.   His act was unjustifiable and reprehensible.

From the human side, this money came into his hands when he was in debt and filled with the necessity of raising money to save the life of his child, then in deadly peril and requiring the services of two nurses and a physician.   The temptation was too great for him to resist, and he betrayed his trust to his client.

Under all the circumstances in this proceeding, it not appearing that respondent has ever been engaged in any improper practices before, I believe that mercy can be shown to him and that the interests of justice will be met by his suspension for a period of two years, with leave to apply for reinstatement at the expiration of that term upon proof of his compliance with the conditions to be incorporated in the order to be entered hereon.

FINCH, McAVOY, MARTIN and O'MALLEY, JJ., concur.

Respondent suspended for two years, with leave to apply for reinstatement at the expiration of that term upon proof of his compliance with the conditions incorporated in the order.